Case number 19-1994. O. Matthews v. Harleysville Lake States Insurance Company. Arguments not to exceed 15 minutes per side. Mr. Tawil, you may proceed for the appellant. Good morning. Welcome to the Court of Appeals. You may proceed. We can't hear you though. He's got to unmute. Yeah. There we go. Okay, now we can hear you. Good morning. Tony Tawil on behalf of the Plaintiff Appellants and I'd like to reserve five minutes of rebuttal time. Very well. Your Honor, this is an insurance coverage matter involving an issue of whether coverage applies under the general rule of anti-concurrent causation or whether the ensuing loss clause is applicable here, whereas the anti-concurrent causation clause shouldn't have been applied. It's our position that the trial court erred in granting summary judgment for the defendant when it applied this default rule of anti-concurrent causation outside the four corners of the contract, which allow for coverage for this claim under the policy. Mr. Tawil, I was looking for your claim that you submitted and I couldn't find it in the record. Maybe you did it poorly. What was the actual claim of covered loss? The claim was for water damage through the roof into the building. The water damage that resulted in the building. So, assume we agree with you on the anti-concurrent causation. Why isn't that barred by the exclusions themselves, as your friend on the other side says? Sure, because the exclusions, if the water damage, you agree that the anti-concurrent causation rule doesn't apply and the water was caused by a design defect, which all the experts agree that this was a design defect in the drainage system that was two and a half inches above the roof. If that's the case, then what it says is what the ensuing loss clause, and it's in exclusion B3, which is page ID number 761. And it says, but we will not pay for loss or damage caused by or resulting from any of the following, which includes a design defect. But it says that if an excluded cause of loss that is listed below, which includes design defect, results in a covered cause of loss, we will pay for that covered cause of loss. Can you go to, do you have the policy and explain this to me? So, covered cause of loss, I'm looking at paragraph three and I'm looking at limitations on it. And that's limitations paragraph five. It says the interior of any building or structure caused by or resulting from rain. And then it says the A, unless the building or structure first sustains damage by a covered cause of loss to its roof or walls through which rain, snow, dot, dot, dot. So why doesn't that limitation apply? This limitation. Okay. So a water leaking into the building is a covered cause of loss. I submit under the contract because it's not excluded. What this says is that the interior of the building that causes a result from rain or snow ice or dust, unless the building or structure first sustains damage by a covered cause of loss, which is the covered cause of loss is the water sitting on the roof causing the weight of the rain on the roof, causing the rain, the roof to sag. Under the collapse provision, judge, under, and if you look page ID seven 46 and seven 47, and this is not a collapse claim. I'm not making that claim. I know defendants have raised that a number of times, but one of the issues that arose is that the, or one of the provision says that we will pay for direct physical loss or damage to the property that results in a collapse. If there's the weight of rain that collects on the roof, but the definition of collapse, the definition of collapse is not applicable to the weight of rain that collects on the roof. So you don't need a collapse in order for the weight of rain that collects on the roof to seep into the building and cause damage based on section D five D. So essentially the court, the trial court relied primarily on Iroquois, which is one of the cases in Michigan that they really started this whole anti-concurrent causation claim. And what they, but Iroquois is a case that did not have an ensuing loss clause. There was no ensuing loss clause in Iroquois. And there was a footnote in Iroquois, which says that, that the default rule, which is this anti-concurrent causation rule, it's footnote four could presumably be altered by the inclusion of an express concurrent causation provision. So the parties can contract around this, this default rule. And they did in this case, by curving it out under the, in the exclusion section B3, which says that if Mr. Mr. Tawil, I think I get that. Can I ask one more? And I promise I just that your friend again, makes another allegation that the wear and tear exclusion, it bars your coverage. Mm hmm. And I don't, I didn't see a response to that. So I'd love one, because I think everyone agrees there was wear and tear here. Well, a couple of things. And I wanted to address that. I'm glad you brought it up. All the experts agree that this is a design defect case issue. That was the cause of this. This wasn't a wear and tear issue. Wear and tear under the general definitions that have been used in normal use, and having a defectively designed roof is not normal use. So I would submit that wear and tear is not applicable here. Their denial letter for the coverage did not say anything about wear and tear. The initial there was a claim that was made earlier of the same year. They said that that was wear and tear. That was January, February, some folks came out, they did some repair work, they want to come back and do some more repair work later on to continue to maintain the roof. And then it leaked again. Wait, explain this to me, because it says in the policy, we will not pay for loss or damage caused by or resulting from any of the following. And then it says, under L, other types of losses, wear and tear. So if it's caused by or results from and I think everyone agrees it partially resulted from wear and tear. I'm not saying it exclusively did, but it partially did. Why doesn't that bar your coverage? I'm not sure I follow you. Sure. Because two things. Number one, I disagree with you judgment respectfully that this was not caused by or resulting from wear and tear was caused by defective design. But number I thought your own expert conceded in part that wear and tear was a cause. Down the road, but the cause was the cause of the wear and tear, I guess you could say, was the defective design. That was the cause of the wear and tear. But how I get around that, Judge, is the ensuing loss clause. Because the ensuing loss clause says that we will pay for those things listed, which is the design that results in a covered loss. So that results or ends in a covered loss. That the contract, they contracted around it. What they didn't say, if Hartleysville Insurance wanted that language in there, they could have included language to say, we will pay for those things listed in paragraphs A through C, not otherwise excluded by any of the exclusions that results in a covered cause of loss. But they didn't include that language. It says that they will pay for the resulting damage from design. And that resulting damage was the water leaking into the building and causing the issue to the building. None of the cases cited by the defendants, except for one, really talk about an ensuing loss clause. The one that does talk about an ensuing loss clause is the TMW Enterprises versus Federal Insurance Company. And in that case, the Court of Appeals, the Sixth Circuit reversed the trial court saying that the ensuing loss clauses in that case did not permit a jury to, or did permit the plaintiff to go back down and allow the court or jury to determine whether and what were the cause of the damages. And that's what, I guess that's the issue here, Judge. Okay. All right, counsel, you've got five minutes rebuttal. You can use them now or you can save it. You know what? I'll save it. All right. Any further questions, Judge Thapar, Judge Radler, at this time? All right. Thank you. Let's hear from the defendant, Appellee. Good morning. May it please the Court, Michael Schmidt for the defendant, Appellee Harleysville. The policy of insurance is not a guarantee or a warranty. Your roof's not going to leak. The policy provides coverage for physical loss from a covered cause of loss. And the policy defines what a covered cause of loss is. And the policy says a covered cause of loss is a loss that's not excluded or limited. And in this case, the court's familiar with the facts. This building was bought in the early 1980s. Dr. Matheson had no idea how old the roof was. This incident didn't happen until 2017. The testimony from the plaintiff's own expert and in 2017, this roof was over 35, probably way more than that, more than double its useful life. And the problem with the roof was when the – he had a leak in January and February. Mr. Schmidt, why isn't – so in the complaint I looked, they alleged that water damage to the roof was one of the covered causes of loss. Why isn't that a covered cause? Damage to the roof? Because it was excluded by all the exclusions in B-2 and B-3 because the water caused damage to the wear and tear to the roof. It caused the holes in the roof. What happened is the drain was – No, I understand what you said in your brief. Counsel, you explained that in your brief. I understand the drain issue. But what I don't understand is it seems to me the roof damage is covered. This is an all-risk policy. The roof damage would be covered, but for a proper exclusion. And I'm not sure what exclusion applies to that. The exclusions in 2L, which says damage caused by resulting from wear and tear, deterioration. What happens is – Can I ask about that? They're subject to the anti-concurrent causation rule? Pardon me? Is the wear and tear provision subject to the anti-current causation rule? There can be – there is – any cause excluded excludes all the coverage. So there's the anti-concurrent causation rule from the Vanguard v. Clark and Iroquois on the beach case, which was Judge Griffin's case, says if one cause is excluded, that's all that matters. You can have 50 causes to what caused the problem to the roof. If one of the 50 is excluded, there's no coverage. So in this case, this roof has the water and the water is weighting it down. And as that happens, the design defect causes that. And that causes the roof panels to sag and then tear. And that damages the roof by tearing them. That's the damage to the roof. Mr. Schmidt, the logic of that is that – and tell me if I'm wrong – if there's $1 million of damage to the roof and $5 of that damage is caused by wear and tear, in other words, by – just assume 1 percent, so whatever that is, say $100 and $1, is caused by wear and tear. The whole claim is barred? That's correct, because the policy says if the loss or damage is caused by or results from any of the following, and it lists wear and tear, deterioration, then the other – Isn't that true then? Isn't the contract in some sense illusory in that a person can – every building in America has wear and tear after the building is built? I mean, how can you ever get insurance with a wear and tear exception? Because you're supposed to probably maintain your roof. The testimony was a probably maintained roof wouldn't have this. You won't have this tearing. And the issue is in this case, this roof was not maintained at all and was doubled past its useful life. But the point is, Your Honor, there's also the other exclusions which also apply, and that is if it's caused by design. And the design is what's caused this roof to tear because you got the drain five inches above. So you're always going to have five inches of water on that roof until it evaporates because the drain was five inches higher than the stagiest part of the roof. And the other issues are workmanship, specification, construction. That's why this policy is not a guarantee you have a good roof. It covers it from a loss. For instance, if you have a windstorm or something and damages the roof, that's what's covered. It's not going to cover the fact that you have a poorly designed or poorly maintained roof. So that's the basis of the exclusion. So it applies not only to the roof, but as to any damage that results caused by or resulting from. So in this case, Judge Drain granted our motion based on the exclusions for the wear and tear deterioration, the latent defect. That's never been even discussed in their brief. He also granted because of limitation from rain entering the building. That's not discussed in their brief. And then the other reason was because of the design specifications and workmanship. So do they lose because of poor fixture, irrespective of what we think of the policy? Correct. They haven't responded to two or three reasons why we won the motion. And on the third reason, this ensuing loss argument, that is incorrect because what that really is, is an exception or he wants to call it ensuing loss to the coverage. And what it says is that he has to go to a different part of the policy to the collapse vision. And because what the exclusion says is, if an exclusion cause of loss results in a covered cause of loss, we will pay for the covered cause of loss. Well, we have to go back to the coverage for rain coming in a building. And the other reason is the other exclusions in B2 for wear and tear deterioration and lack of maintenance. Those aren't subject to the limit to that is ensuing loss argument. And then he goes to this collapse issue. And the issue is he even admitted today and admitted three times a record or argument. When he brought that up, Judge Drain said, wait a minute, there's no collapse here. And he said three times on the there was no collapse. And the point is that in this on that issue, there's no mention of collapse anywhere in any deposition or anybody talked about it. And this issue has been dealt with by mission court of appeals in three cases, one of which is pioneer versus plan, which was Judge Griffin's case. That case could not be more on point if you wanted to, because in that case, the other two cases, Stuttman and Talladega was the case I handled, they all were a roof, bad design, it leaked, the policy excluded design defect, the insured claim there was a collapse. And the courts all held, first of all, we don't agree there's a collapse. But even if there was a collapse, they say that it's excluded by the design exclusion. And, and that's based on right from the pioneer case, it says, more importantly, the courts of this state have rejected the concurrent causation theory in the context of insurance liability, see Vanguard versus Clark as a matter of law, if one cause is covered by a policy, it does not notify another unambiguously excluded cause insurance policy. So in this case, we have all these different exclusions, all we need is one. But we have six or seven or eight or nine or 10. They're all admitted in the plaintiff's brief in italics, every one of these lack of maintenance, defective design, specification, wear and tear deterioration, they're all admitted in his brief. And there's no, there's no exception to them. And the Stuttman case of the same thing, it's that you can have you claim a collapse, it's still excluded by the by the design exclusion, you can't write the exclusion out of the policy. And that's when you go back to Vanguard versus Clark. And you're going to reach a vendor versus Clark, the guy pulls his car in the garage. He's drunk, he passes out, he leaves the engine running carbon dioxide goes in the house kills him and his family. The question is, there's an exclusion of policy for use of a motor vehicle. And his argument is, well, wait a minute. I also shut the garage door. That's a separate issue of negligence. And the Supreme Court said, No, because you have an exclusion for the motor vehicle, you can't go somewhere else. As a matter of fact, Judge Griffin's father was a panel in that case. And then you're acquiring the beach that is case with Judge Griffin was on in that case, the hotel says, we got some water damage. And we say it's caused by a windstorm. And, and then the insurance company says, No, it's caused by seepage. And the court said, you look to the exclusion of you have an exclusion, you can't look to some other reason. And you have an exclusion for seepage. And that's enough. And the language and you're going to beat the exact language we have here, we will not pay for loss or damage caused by or resulting from any of the following. There was no language saying if there's some other collapse, we don't have to worry about it. That's the exact language that's in our policy. And the court said, that's all you need. And in this case, when we look at what the testimony was, plaintiff's brief says right in it, Mr. William, that's our expert clarified that the weight of the ponding was caused by the design of the roof. He admits that's the cause. As a position I asked him, was the weight of the water was caused by the bad design of the roof? Correct answer? Yes. And in the brief on appeal, both parties agree that cause of water filtration with his back and design of the roof. So he's admitting the exclusion. So the point is, you have an exclusion that applies. And it bars the coverage. And we had three different grounds for this. And Judge Drain worked through each one of them and how they apply and determined that each and every one of our exclusions and limitations barred the coverage under the B two exclusions, under the B three exclusions and under the limitation. So does the court have any questions? Thank you, Mr. Smith. Any further questions? Judge bar trailer. All right. Thank you. Thank you for your argument, Mr. Schmidt. Rebuttal. I thought it's rebuttal. Thank you. Um, number one, Mr. Schmidt indicated that there were a number of different things that caused, uh, this, this loss of wear and tear. There's a design defect. There's a maintenance design, settling, cracking. Um, if it is all of those things or, or, or could be one of those things or a combination of those things, then I would submit that that's a factual question for a jury to decide if one could be covered under this policy and it, and one could be excluded under the policy. Um, number one, number two, um, uh, judge, you, you picked up on one of my rebuttal points, which is that anytime an insurance contract has this wear and tear provision, it would be illusory because every time it's in there, they could always point to say to, to, to it, to say wear and tear there's wear and tear. But again, the death as defined by the case law, wear and tear means normal youth. And here, uh, water sitting on a roof because of an improperly designed drain, um, is, is not the How do you, how do you measure normal use when a roof is double its useful life? Well, I measured has zero use has zero usefulness at that point. Well, no, no, I understand that point, but the, the, they insured it. I mean, they insured that roof at double their life. They could have anytime come out and inspected it's in the policy. Uh, they insured the roof at, at its age. Um, just like insuring a classic car, you take some of those risks and that's part of the insurance business. So, um, it's not normal, um, normal use, um, like it would be a hinge on a door that opened and closes a hundred times and then it falls apart. That's normal use as opposed to kicking the door down and breaking the hinge. That's not normal use for a hinge. Um, so there's a distinction there. Um, the other thing I didn't, um, I, I don't believe that I abandoned any arguments. I mean, I'm arguing that this exclusion, which is a design defect exclusion. And because of the ensuing loss clause, um, allows for the damage to the building to be covered. And if that Mr. To wheel, I obviously like your wear and tear argument, but where was it in the district court in the briefs or anywhere? And where is it on appeal in the briefs after the district court specifically relied on it? I didn't find it. Maybe it's there and I'm missing it. I don't know if I necessarily specifically talked about it because. But if you don't specifically talk about it in the district court and then you don't specifically talk about it in front of us, we call that forfeiture. Well, that's because judge, I don't believe it applies because the experts all say that this is a design defect. They don't say wear and tear wear and tear only came into effect because the district court found it applied. So why wasn't it then? Doesn't it have to be briefed in front of us and explain to us? I, I, I, I'm going to have to look at the opinion. Okay. Yeah, I'm sorry. Um, and then lastly, judge, the cases relied upon by the defendant, Mr. Schmidt, a pioneer, Iroquois Vanguard. Um, you know, those, those are the three big cases. None of them had an ensuing loss clause that said this is barred from coverage. But if X, Y, and Z happened, then it isn't barred from coverage. Unlike this case. And that's the distinguishing factor. And that's where the trial court got it wrong because the trial court relied upon Iroquois to say this wear and tear provision also applies. And therefore two causes could have caused this. And therefore the whole thing is, is it coverage is denied for the whole thing. And I don't even really focus on the wear and tear part of it because the ensuing loss clause says that if damage comes from a design defect, it's caused results from a covered cause of loss, they'll pay for it. Um, regardless of whether it's from wear and tear, uh, or from, um, deterioration, hidden or latent defect, or any of the other things that Mr. Schmidt talked about, if it results in a covered cause of loss, which the water infiltration here is covered, it's, it's covered, uh, because of that ensuing law loss clause, they contract, this is their contract and any ambiguity in it has to be construed against them. And they put that language in here, Dr. Matthews or Matthew certainly didn't. Uh, so I don't know what more to say about that because I believe that this language allows for this claim. Okay. Any further questions? All right. Thank you. Uh, case will be submitted. May call the next case. Thank you. Thank you.